**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**P. ADAM DAVIS**
Davis & Sarbinoff, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

Attorney for Chicago Franchise Systems
**EDWARD F. HARNEY, JR.**
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID JESSUP and DIANE JESSUP, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1302-PL-160 |
| | ) | |
| CHICAGO FRANCHISE SYSTEMS, INC. | ) | |
| and JAG'S DOUGH DÉCOR d/b/a | ) | |
| NANCY'S PIZZA, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE HAMILTON CIRCUIT COURT
The Honorable Paul A. Felix, Judge
Cause No. 29C01-0904-PL-777

**November 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

David and Diane Jessup appeal a trial court decision declining to modify the award they received following arbitration with their franchisor, Chicago Franchise Systems ("Chicago"). They raise four issues, which we consolidate[1] and restate as whether their request for modification was timely; whether they presented adequate grounds to permit modification; and whether the trial court properly calculated the damage award. On cross-appeal, Chicago asks that it be awarded attorney fees and costs.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

The Jessups sued Chicago alleging, among other things, Chicago allowed a new franchisee within the Jessups' "protected area," (App. at 35), misrepresented the Jessups' cost of goods, did not pass on to the Jessups certain rebates and incentives to which they were entitled, and misappropriated or did not properly use money the Jessups paid for advertising. In its counterclaim, Chicago alleged breach of contract on the Jessups' part in the form of failure to pay certain royalty and advertising fees.

---

[1] The trial court denied as moot the Jessups' request to vacate the award in favor of Chicago because the Jessups "orally [withdrew] their request for *vacatur* at the September 11, 2012 hearing." (App. at 9.) In their reply brief the Jessups offer a one-paragraph "Clarification as to Waiver of *Vacatur* Argument," (Appellants' Reply Br. at 14), in which they assert they asked to vacate only "that portion of the Arbitration Award in which Franchisor was awarded the Franchisor award." (*Id.*) The Jessups' counsel did "stipulate that our vacation was simply for purposes of vacating that portion of the award to allow for modification." (App. at 669.) Counsel did not specify what "that portion" of the award was, and went on to say "We don't meet any of the grounds under Section 10 [of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, which governs vacation of an award]. We are sticking with Section 11 [which governs correction and modification of an award]." (*Id.*) Counsel then said "we're just looking to vacate the entry of your judgment to replace it with no judgment. So modify, I don't care how you say it." (*Id.*)

In light of counsel's statement the Jessups did not "meet any of the grounds under Section 10" and wanted to vacate the entry of judgment to replace it with "no judgment," we agree with Chicago that the Jessups have waived their *vacatur* argument for appeal.

Chicago filed a motion to compel arbitration, which the court granted. The arbitrator heard evidence and then on May 13, 2011, awarded the Jessups $68,959.19 for damages and awarded Chicago $32,478.36 on its counterclaim. It also directed Chicago to pay the Jessups $1,262.50 to cover certain costs they incurred.

On June 6, 2011, the Jessups sent an email to the arbitrator and to Chicago's counsel requesting modification of the award. On June 16, Chicago responded, also by email. The arbitrator denied the modification request, stating he had no authority to modify the award, and almost a year later, on May 10, 2012, the Jessups filed with the trial court[2] a motion to "Modify, Confirm and Enforce," (*id*. at 21), the arbitration award. After a hearing, the trial court denied the Jessups' request for modification and confirmed the award.

## DISCUSSION AND DECISION

Our review of arbitration awards is very narrow in scope. *Fiducial Inv. Advisors v. Patton*, 900 N.E.2d 53, 60 (Ind. Ct. App. 2009). An award should be set aside only when one of the grounds specified by statute for vacation of an award is shown, *id.*, and our role in reviewing an arbitration award is limited to determining whether the party challenging the award has established any of the grounds for challenge permitted by statute. *Id.*

The trial court's decision declining to vacate an arbitration award is reviewed under the same standard as any other trial court decision. *Barbera v. AIS Servs., LLC*, 897 N.E.2d 485, 487 (Ind. Ct. App. 2008). Thus, we accept findings of fact that are not clearly erroneous and decide questions of law *de novo*. *Id.*

---

[2] Neither party directs us to any deadline for the court filing.

1.      Timeliness

The Federal Arbitration Act (FAA) provides that notice of a motion to vacate, modify, or correct an award "must be *served on the adverse party or his attorney* within three months after the award is filed or delivered."  9 U.S.C. § 12 (emphasis added).  The trial court found the arbitrator's award was filed May 13, 2011, and the Jessups filed their Motion to Modify on May 10, 2012.  On that basis it found the Jessup's motion time-barred, stating "A motion to vacate or modify an arbitral ruling must be *filed with the court* and served on the adverse party before the expiration of the three-month period."  (App. at 8a) (emphasis added).

The court's ruling was erroneous, as section 12 of the FAA imposes no requirement that such a motion be "filed with the court" within the three-month period; it requires within that period only service on the adverse party or his attorney.  The Seventh Circuit addressed that provision in *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 572 (7th Cir. 2007), *reh'g denied*:

> [W]e wish to clarify some of our previous statements about the tolling date. The parties point out, correctly, that at least two of our past decisions could be read to provide some support for Webster's position that the statute of limitations stops upon the *filing* of a motion to vacate or otherwise alter an award.  *See Olson v. Wexford Clearing Servs. Corp.,* 397 F.3d 488, 492 (7th Cir.2005) ("'[H]e had to file suit within three months of the April 15 award to preserve his arguments about the arbitrator's alleged misconduct"); *Papapetropoulous v. Milwaukee Transp. Servs., Inc.,* 795 F.2d 591, 598 n.8 (7th Cir. 1986) (stating that motion was time-barred because plaintiff "failed to file it within the three month statute of limitation time period contained in 9 U.S.C. § 12").
>
> * * * *
>
>      To the extent that our use of the term "filing" in those cases is misleading, we clarify now and for purposes of future cases that *service* of a motion to vacate is the act that stops the three-month statute of limitations.

4

Unless and until Congress amends § 12 and makes filing the critical date, we will continue to enforce the plain language of the statute.

Chicago did not address, or even acknowledge the *Webster* decision in its appellate brief; instead it relied in its timeliness argument on the *Olson* and *Papapetropoulous* decisions that *Webster* had explicitly disapproved in 2007. We admonish Chicago's counsel to more diligently determine the current status and continued validity of the legal authority on which it relies.

The Jessups assert they satisfied the Section 12 requirement when they sent Chicago's counsel and the arbitrator an email on June 6, 2011, stating they were seeking modification of the order and listing their grounds for doing so. Neither party argues the email message amounted to inadequate service, and we decline to so hold. As we prefer to decide cases on their merits whenever possible, *see, e.g., Sekerez v. Gehring*, 419 N.E.2d 1004, 1008 (Ind. Ct. App. 1981), we will consider the merits of the Jessups' appeal.

2. Grounds for Modification[3]

In addition to their request the award to Chicago be vacated, the Jessups asked the trial court to modify the arbitration award "with regard to (1) Damages Relating to Cost of Goods,

---

[3] The Jessups argue at length that the arbitrator's "manifest disregard of law" serves as a basis for the trial court's authority to modify the award. (Appellants' Br. at 17.) It does not. In *Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 284 (7th Cir. 2011), the Seventh Circuit said that except for situations where an award directs the parties to violate the legal rights of third persons who did not consent to the arbitration, "manifest disregard of the law is not a ground on which a court may reject an arbitrator's award under the Federal Arbitration Act." Addressing section ten of the FAA, which provides a list of reasons an award may be vacated, the *Affymax* court noted "[t]his list is exclusive; neither judges nor contracting parties can expand it. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–89, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). Disregard of the law is not on the statutory list." Decisions to the contrary, it held, did not survive *Hall*. *Id*. at 285. The Jessups do not address, or acknowledge, *Hall* or *Affymax* in their brief or reply brief.

5

(2) Treble Damages . . . and (3) Attorney Fees." (App. at 22.)   After determining the

Jessups' motion was not timely, the trial court went on to determine, correctly, that it could

not modify the award because the Jessups had not provided grounds for modification

permitted under section eleven of the FAA.

> 9 U.S.C. § 11 provides a court may modify an arbitration award:
>
> **(a)** Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> **(b)** Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> **(c)** Where the award is imperfect in matter of form not affecting the merits of the controversy.
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

> Section eleven provides the FAA's exclusive grounds for expedited modification.

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582-84 (2008).  Factual or legal errors

by arbitrators -- even clear or gross errors -- do not authorize courts to annul awards.  *Gingiss*

*Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995).

> Section eleven
>
> Substantia[tes] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway.  Any other reading opens the door to the full-bore legal and evidentiary appeals that can "rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process," *Kyocera* [*Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003), *cert. dismissed* 540 U.S. 1098 (2004)]; *cf. Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 184 (C.A.7 1985) [, *cert. denied* 475 U.S. 1010 (1986)], and bring arbitration theory to grief in post-arbitration process.

6

*Hall St. Associates*, 552 U.S. at 588.

The Jessups did not establish a basis for modification under section 11. They appear to argue on appeal there was there was an "evident material miscalculation of figures," 9 U.S.C § 11, with regard to the cost of goods award because the arbitrator's cost of goods award was not the same amount reflected by the evidence the Jessups presented. The arbitrator found Chicago "consistently misrepresented the cost of goods, vendor contracts, and the level of assistance" it would give the Jessups, (App. at 15), and the Jessups suffered damages that it found, "after careful calculation," (*id*.), amounted to $60,000.00.

The Jessups note they presented evidence their cost-of-goods-related damages were greater than that amount, but they do not direct us to a specific "miscalculation" that was the basis for the arbitrator's award. Once a factual question is determined in arbitration, it is finally adjudicated and cannot be relitigated. *Bopp v. Brames*, 677 N.E.2d 629, 634 (Ind. Ct. App. 1997). Arbitrators are not restricted to evidence submitted by the parties but may base their decision on their own knowledge and expertise. *Id*. Because we are not afforded the benefit of a record of the arbitration proceedings, we presume the award was justified by the evidence. *Angell Enters., Inc. v. Abram & Hawkins Excavating Co., Inc.*, 643 N.E.2d 362, 365-66 (Ind. Ct. App. 1994). To the extent the determination of the amounts are questions of fact, we do not have the prerogative to reconsider those findings. *Id.* at 366

As the Jessups have not demonstrated a "material miscalculation" that led to the arbitrator's award, they did not provide section eleven grounds on which the trial court could modify the award.[4]

3.    Attorney Fees

Chicago argues it is entitled to attorney fees because the franchise agreement provided "the prevailing party shall be entitled to and the non-prevailing party shall pay" such fees. (App. at 71.) We decline to characterize Chicago as the "prevailing party."

Our Indiana Supreme Court addressed the meaning of "prevailing party" in *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771-72 (Ind. 2008):

> As the contract at issue does not define the term "prevailing party," we will turn to sources that reflect the ordinary meaning of the term at the time the contract was executed. At the time of contract execution, Black's Law Dictionary defined "prevailing party" as:
> > The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered.
> 
> Black's Law Dictionary 1188 (6th ed. 1990). This definition appears to contemplate a trial on the merits and entry of a favorable judgment in order to obtain prevailing party status.
> 
> Several Indiana court decisions issued shortly before the parties executed their contract corroborate this approach. *See Heritage House of Salem, Inc. v. Bailey,* 652 N.E.2d 69, 79-80 (Ind. Ct. App. 1995) (plaintiff is not a prevailing party where it obtained a preliminary injunction but where judgment ultimately was rendered for the defendant)[, *reh'g denied, trans. denied*]; *State Wide Aluminum, Inc. v. Postle Distribs., Inc.,* 626 N.E.2d 511,

---

[4] While the trial court properly declined to modify the award, we must agree with the Jessups that the trial court's order should have included an additional amount of $1,262.50 payable to the Jessups. The arbitrator's award provided Chicago "shall reimburse [the Jessups] $1,262.50 over and above the net award set forth immediately above," (App. at 16), representing certain expenses the Jessups had incurred. The trial court did not modify the award, but its order did not include the additional amount. We accordingly remand so the trial court may modify its order to conform to the arbitration award.

516-17 (Ind. Ct. App. 1993) (State Wide is not a prevailing party under § 34-1-32-1(b) (now § 34-52-1-1) because it did not receive a judgment)[, *reh'g denied, trans. denied*]; *State ex rel. Prosser v. Ind. Waste Sys., Inc.,* 603 N.E.2d 181, 189 (Ind. Ct. App. 1992) (a favorable ruling on a motion is not a judgment allowing the recovery of costs as a prevailing party).

> Furthermore, it seems unlikely that parties entering into a contract would intend for a settlement reached during mediation to result in either party obtaining prevailing party status. One of the purposes of mediation is to provide an atmosphere in which neither party feels that he or she has "lost" or "won" a case. Mediation is meant to remove some of the contentiousness of formal litigation in order to facilitate the negotiation process.

> \* \* \* \* \*

> The agreement before us today, of course, is a straightforward and unadorned version. Aside from the dictionary and case law on which we rely, it seems apparent that the bright line approach these represent is the best for most litigants. The worst approach would be one in which "prevailing party" is treated with ambiguity or discretion, provoking litigation about who won the litigation, in addition to litigation over the appropriate amount of fees.

(Footnote omitted.)

To find Chicago a "prevailing party" even though the Jessups prevailed at arbitration on some issues and were ultimately awarded a greater amount on their claim than Chicago was on its, would be to treat the term with the "ambiguity or discretion, provoking litigation about who won the litigation, in addition to litigation over the appropriate amount of fees," *id*., against which our Supreme Court cautioned. Nor did Chicago prevail on every issue presented in this appeal. We accordingly decline to hold Chicago is entitled to attorney fees pursuant to the arbitration agreement.

## CONCLUSION

The trial court properly declined to modify the arbitration award, and Chicago cannot be characterized as a "prevailing party" for purposes of recovery of attorney fees. However,

9

the trial court's order should have included the additional amount the arbitrator awarded the Jessups "over and above the net award." (App. at 16.) We therefore affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and BRADFORD, J., concur.